# In the United States Court of Federal Claims

No. 25-158
Filed: August 12, 2025
NOT FOR PUBLICATION

|  |
|---|
| **RAMON M. MARRERO,** |
|              *Plaintiff*, |
| v. |
| **UNITED STATES,** |
|              *Defendant*. |

*Wojciech Z. Kornacki*, Pentagon Law Office, Washington, DC, for the plaintiff.

*Evan Wisser*, Civil Division, U.S. Department of Justice, Washington, DC, *Capt. Ellen Denum*, U.S. Army Legal Services Agency, Ft. Belvoir, VA, of counsel, for the defendant.

## MEMORANDUM OPINION

### *HERTLING*, Judge

The plaintiff, Ramon M. Marrero, served as a non-commissioned officer ("NCO") in the United States Army. He was accused and tried at a court-martial of five specifications arising from two sexual assaults against lower-ranking military personnel. He was acquitted of three specifications but convicted of two specifications arising from the first of the alleged assaults. Upon his appeal, the Judge Advocate General ("JAG") of the Army overturned one of the convictions but sustained the other. The plaintiff was sentenced to a period of confinement and a reduction in rank, with a commensurate reduction in pay. He was discharged from the Army at the end of his confinement.

After exhausting his appeals through the military courts, the plaintiff brought this suit, alleging that his court-martial proceedings and conviction were constitutionally defective. As a result, he seeks to have his conviction overturned and to recover back pay and associated benefits.

The defendant has moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for lack of jurisdiction and failure to state a claim. The defendant argues that the court lacks jurisdiction over the complaint because it does not rely on a money-mandating source of law, and the plaintiff waived most of his claims by failing to present them during his court-martial and appeal. The defendant also argues that even if the court has jurisdiction over the complaint, the complaint fails to state a claim upon which relief can be granted and must still be dismissed.

The plaintiff has failed to demonstrate that his claims fall within the Court of Federal Claims' narrow ability to conduct a collateral review of a court-martial conviction. Even if the court possessed jurisdiction over the claims, the plaintiff has failed to show that any of the violations alleged in the complaint rendered his court-martial proceedings constitutionally unfair. He has therefore failed to state a claim upon which relief can be granted. The defendant's motion to dismiss is granted.

## I.     FACTUAL BACKGROUND[1]

The plaintiff enlisted in the Army in 2000. During his service, he deployed to Iraq, Afghanistan, and South Korea. The plaintiff received numerous awards and medals during his service and was promoted to serve as an NCO. On February 27, 2012, while off-duty during training at Fort Meade, Maryland, the plaintiff was with two other soldiers, one of whom was a female NCO at the same training, at a tavern. After an evening of drinking, the group returned to the base and continued to socialize in the plaintiff's quarters. The other male soldier returned to his quarters after a brief period, and the female NCO remained in the plaintiff's room. Afterward, the female NCO accused the plaintiff of sexual misconduct. The accusation triggered an investigation by the Army.

The plaintiff never denied having been intimate with the complainant. The factual dispute was over whether the complainant had consented and whether she was intoxicated and, as a result, able to give her consent. The investigation and trial focused on these issues.

The Army's investigation resulted in a preliminary hearing conducted on January 10, 2014, under Article 32 of the Uniform Code of Military Justice, 10 U.S.C. § 832.[2] During the Article 32 hearing, three specifications of misconduct against the plaintiff were considered. As required by 10 U.S.C. § 832(e), the proceedings were recorded. At the hearing, the complainant and her boyfriend, whom the complainant had called both while at the plaintiff's residence and

---

[1] The facts outlined here reflect the allegations of the complaint and related factual materials provided by the defendant with its motion to dismiss that add detail to the facts alleged by the plaintiff. For example, the complaint does not specify the underlying facts of any of the five specifications with which the plaintiff was charged and on which he was tried. Exhibits attached to the motion to dismiss provides these details, which do not contradict or put in question any of the plaintiff's allegations. They may therefore be relied on in resolving the motion to dismiss. *See Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015). For purposes of resolving the motion, the facts alleged in the complaint are assumed to be true, and this recitation of the facts therefore makes no findings of fact.

[2] During an Article 32 hearing, a hearing officer determines: (a) whether the specification alleges an offense under the Uniform Code of Military Justice, (b) whether there is probable cause to believe the accused committed the charged offense, (c) whether the convening authority has court-martial jurisdiction over the accused and the offense, and (d) a recommendation on the disposition of the case. 10 U.S.C. § 832(a)(2).

after leaving it, testified about their recollections of the events of the evening at issue. The Army lost the recording of the proceeding sometime between January and July 2014. Following the Article 32 hearing, the plaintiff's defense team recommended that he plead guilty, but the plaintiff rejected that advice. The plaintiff's defense counsel never sought dismissal of the charges due to the lost recording.

The Army held a second Article 32 hearing on July 8, 2014, to consider evidence that the plaintiff had sexually assaulted the NCO in 2012 and to hear new allegations that he sexually assaulted a second female servicemember in January 2014. (ECF 1 at ¶¶ 101-08.)[3]

After the second Article 32 proceeding, the plaintiff was referred for a court-martial on five specifications: the three charged after the first Article 32 proceeding involving the NCO and two new ones arising from the alleged assault on the second servicemember. The first specification alleged that the plaintiff had slapped the complainant on the buttocks without the complainant's permission; the second specification alleged that the plaintiff had kissed the complainant's breasts when she was incapacitated due to intoxication; the third specification alleged that the plaintiff had engaged in sexual intercourse with the complainant when she was incapacitated due to intoxication; the fourth and fifth specifications alleged that the plaintiff had committed two non-consensual sexual acts against the second female servicemember. (ECF 9-1 at 2.)

The plaintiff pleaded not guilty to all five specifications. Prior to trial, the prosecution filed a notice of intent under Military Rule of Evidence 413, that it intended to argue that the similarities between the two separate sexual assaults charged in the five specifications "demonstrate[d the plaintiff's] propensity to commit crimes of sexual misconduct."[4] (ECF 9-3 at 19 (quoting the prosecution's Rule 413 notice).)

The plaintiff was tried by a court-martial before a military jury, called panel members, in October 2014. At the close of the trial, the military judge instructed the jury as follows:

> Evidence that the accused committed sexual offenses alleged in
> Specifications 1 through 3 may have no bearing on your deliberations

---

[3] It is unclear from the complaint whether the complainant from the 2012 event testified at the second Article 32 proceeding or whether that proceeding merely considered the written report from the first Article 32 proceeding. (*See, e.g.*, ECF 1 at ¶ 102.) In his brief, the plaintiff seems to acknowledge that she did testify in person and was subject to cross-examination. (ECF 12 at 6.) At oral argument, the defendant asserted that the second Article 32 proceeding did not hear from the first complainant and heard live testimony only from the second complainant. Reading the complaint's allegations in the light most favorable to the plaintiff, this opinion assumes that the NCO complainant from the first alleged assault only provided live testimony at the January 2014 Article 32 proceeding, the recording of which was lost.

[4] Military Rule of Evidence 413 mirrors Rule 413 of the Federal Rules of Evidence.

>     in relation to [S]pecifications 4 and 5, except in the following
>     circumstance.  If you determine, by a preponderance of the evidence,
>     that it is more likely than not the offenses alleged in Specifications 1,
>     2, and 4 occurred, even if you are not convinced beyond a reasonable
>     doubt that the accused is guilty of those offenses, you may then
>     nonetheless consider the evidence of those offenses for its bearing on
>     any matter to which it is relevant in relation to Specifications 1, 2, and
>     4.  You may also consider the evidence of such other sexual offenses
>     for its tendency, if any, to show the accused's propensity or predisposition
>     to engage in sexual offenses, specifically as it relates to Specifications 1,
>     2, and 4. . . .

(*Id.* at 20.)[5]

The plaintiff was acquitted of the first specification but was convicted of specifications two and three, arising from the 2012 incident.  The plaintiff was acquitted of both specifications (specifications four and five) relating to the 2014 incident involving the second servicemember.  The plaintiff was sentenced to confinement for 179 days and a reduction in rank from E-6 to E-3.  (*Id.* at 3.)  The plaintiff was ultimately confined for 137 days and discharged six months after completing his sentence of confinement.  (ECF 1 at ¶¶ 40-41.)

In July 2017, the plaintiff appealed his conviction to the JAG under Article 69(a) of the Uniform Code of Military Justice.  10 U.S.C. § 869(a).  (ECF 1 at ¶ 136.)  He argued that the evidence was legally insufficient to support the conviction on specifications two and three.  (ECF 9-3 at 9-18.)  The plaintiff also argued that the military judge had "abused his discretion by granting the government's motion to use evidence of charged sexual misconduct . . . to show propensity to commit other charged sexual misconduct."  (*Id.* at 18.)  The plaintiff argued that this violation, committed by the military judge when he instructed the jury that it could rely on such evidence, deprived him of his due process right to require the government to prove each element of each offense beyond a reasonable doubt."  (*Id.* at 23.)  The plaintiff presented no other arguments on appeal to the JAG.

In July 2019, the JAG concluded that the military judge's instruction was erroneous under the decision in *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017).[6]  As a result, the JAG set aside and dismissed the plaintiff's conviction under specification two.  (ECF 9-4.)  The JAG concluded, however, that the erroneous jury instruction did not reach specification three, and that "there [was] no reasonable possibility that the error complained of contributed the finding of

---

[5] These instructions to the panel are reflected, but not quoted, in the complaint.  (ECF 1 at ¶¶ 126-29.)

[6] The decision by the JAG is undated.  The complaint alleges that the decision was rendered in July 2019.  (ECF 1 at ¶ 143.)

guilty" on specification three. (*Id.*) Accordingly, the JAG upheld the conviction and sentence on that specification. (*Id.*)

Although the JAG rendered his decision in July 2019, the plaintiff "was not properly notified of this decision until March 2, 2020." (ECF 1 at ¶ 147.) The plaintiff then requested reconsideration on April 28, 2020. (*Id.* at ¶ 148.) In July 2020, the Army informed the plaintiff that the JAG's determination on appeal was "final and conclusive under Article 76, Uniform Code of Military Justice." (*Id.* at ¶ 153.)[7]

The plaintiff then petitioned for review to the Army Court of Criminal Appeals, which dismissed the petition for lack of jurisdiction. (*Id.* at ¶ 157.) The plaintiff then sought review in the United States Court of Appeals for the Armed Forces, which dismissed the petition on August 31, 2021. (*Id.* at ¶ 159.)

## II.     PLAINTIFF'S CLAIMS

The plaintiff filed his complaint in this court in January 2025, seeking damages and applicable allowances and benefits based on the reduction in rank attributable to his conviction by a trial marred by constitutional violations. The plaintiff also seeks the overturning of his conviction, restoration of his rank to E-6, correction of his military records, and the award of any other relief necessary to afford him full relief. The complaint does not specifically cite the Military Pay Act, 37 U.S.C. § 204, as the jurisdictional basis for the claim. At oral argument, the plaintiff clarified that the monetary relief he seeks is the restoration of rank and corresponding backpay for the difference in pay between E-6 and E-3 for the period of his confinement and remainder of his Army service.

The complaint identifies four counts, each alleging a constitutional violation during the plaintiff's court-martial proceeding.

First, the plaintiff alleges that the Army's loss of the recordings of the first Article 32 hearing deprived the plaintiff of the right to confront witnesses against him. (ECF 1 at ¶¶ 167-68.)

Second, the plaintiff alleges that the military judge presiding over the court-martial proceeding improperly instructed the panel members to consider propensity evidence, an error which the Court of Appeals for the Armed Forces has characterized as a constitutional error. *See United States v. Hukill*, 76 M.J. at 222 (cleaned up) (improper use of charged conduct as propensity evidence "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt"). As a result of the improper jury instruction, the complaint alleges, the findings of the court-martial proceedings were based on the plaintiff's

---

[7] Article 76 of the Uniform Code of Military Justice provides that "appellate review of . . . the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed . . . are final and conclusive." 10 U.S.C. § 876.

perceived propensity to engage in sexual misconduct, and the proceedings denied the plaintiff the chance to "defend himself against all charges that had to be proven beyond a reasonable doubt." (ECF 1 at ¶ 130.)

Third, the plaintiff alleges that the JAG decision overturning the conviction on specification two for a constitutional violation arbitrarily and capriciously determined that the same constitutional error of the improper jury instruction did not mandate the dismissal of the conviction under specification three. (*Id.* at ¶¶ 186-87.) As a result, the Army failed to grant full relief from the constitutional violations the plaintiff suffered during his court-martial. (*Id.* at ¶ 189.)

Fourth, the plaintiff alleges that he received ineffective assistance of counsel before, during, and after his court-martial conviction. (*Id.* at ¶ 191.) The complaint cites several infirmities in the legal representation the plaintiff received that, the plaintiff argues, amount to ineffective assistance of counsel. Throughout the plaintiff's trial process, the defense team recommended that the plaintiff plead guilty and change his personal statement. (*Id.* at ¶ 194.) The team also failed to move to dismiss the charges presented in the January 2014 Article 32 hearing, the audio tapes of which were lost. Finally, the complaint alleges that the plaintiff's defense team failed to consider evidence that may have helped the plaintiff's case, failed to object to a juror who spoke prejudicially about the plaintiff's case before the trial, and failed to present witnesses that would have helped the plaintiff's case. (*Id.* at ¶¶ 195-99.)

### III.   PROCEDURAL HISTORY

The plaintiff filed his complaint on January 29, 2025. (ECF 1.) On May 23, 2025, the defendant moved to dismiss the complaint. (ECF 9.) The defendant argues that the Court of Federal Claims lacks jurisdiction over the plaintiff's complaint because: (a) the complaint neither cites a money-mandating source of law entitling the plaintiff to relief nor alleges entitlement to money damages; (b) the plaintiff implicitly seeks review of his court-martial conviction, which the court may only undertake in limited circumstances related to a claim for money damages; and (c) the plaintiff failed to exhaust available remedies for most of his constitutional claims, because he did not present those claims to the court-martial or the JAG. The defendant also argues that the complaint fails to state a claim upon which relief can be granted.

The plaintiff opposed the defendant's motion on June 23, 2025. (ECF 12.) He argues that he exhausted his available remedies, and that his complaint does not amount to a request review the merits of his court-martial conviction but is, instead, a claim for damages under the Military Pay Act. As to the defendant's argument that the complaint fails to state a claim, the plaintiff argues that the defendant was prematurely attempting to litigate the merits of the claims. That same day, the plaintiff also moved to for leave to amend the complaint to remedy the jurisdictional defect identified by the defendant by adding a citation to the Military Pay Act. (ECF 13.)

On July 7, 2025, the defendant replied to the plaintiff's opposition and separately opposed the plaintiff's motion for leave to amend his complaint, arguing the amendment would be futile. (ECF16; ECF 15.) The plaintiff replied to the defendant's opposition to the motion for

6

leave to amend the complaint on July 11, 2025. (ECF 17.) Oral argument was held on July 30, 2025. At the close of oral argument, the Court announced that it would grant the motion to dismiss. On August 8, 2025, the plaintiff filed a new motion for leave to file an amended complaint. In this motion, the plaintiff seeks to rebut the defendant's factual assertion at oral argument regarding when the plaintiff's enlistment was due to expire (see footnote 8, below); he also seeks to add a claim challenging the sufficiency of the evidence.

## IV.   STANDARDS OF REVIEW

The defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), under which a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

The defendant has also moved to dismiss the claim for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). Dismissal for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## V.   DISCUSSION

The plaintiff argues that four defects in his court-martial proceeding separately and jointly violated his constitutional rights: (1) the Army's loss of the audio recording of the first Article 32 proceeding containing the complainant's testimony against the plaintiff violated his right to confront witnesses against him; (2) the improper jury instruction allowing propensity evidence denied him the right to a presumption of innocence; (3) the JAG's affirmance on appeal of the conviction on specification three was arbitrary and capricious; and (4) the plaintiff received constitutionally ineffective assistance of counsel.

### A.   Jurisdictional Analysis

The defendant first challenges the court's jurisdiction to consider the plaintiff's claim. To bring a claim under the Tucker Act, a plaintiff must allege a claim for monetary damages

arising under a money-mandating source of law. *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). A provision of law is money-mandating if it "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan v. United States*, 424 U.S. 392, 400 (1976) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)). The Military Pay Act, which the plaintiff failed to cite in his initial complaint but seeks to add to his proposed amended complaints, is money-mandating. *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004). Through the Military Pay Act, the court has jurisdiction over actions challenging a servicemember's reduction in rank and commensurate reduction in pay, including those stemming from a court-martial. *Reid v. United States*, 159 Fed. Cl. 619, 627 (2022).

Merely alleging a claim under the Military Pay Act, however, is not on its own adequate to support the court's jurisdiction over the complaint. A plaintiff must also allege an actual monetary injury. The defendant argues that the complaint fails to allege that the plaintiff suffered any monetary injury arising from his court-martial. Although the allegation is barely made, the complaint satisfies this requirement. Upon conviction, the plaintiff alleges, he was reduced in rank from E-6 to E-3 until his discharge at the end of his confinement. For one day less than six months, therefore, the plaintiff received less in salary than he would have received had he not been reduced in rank. The complaint thus alleges a monetary injury arising from his allegedly unconstitutional conviction sufficient to support jurisdiction under the Military Pay Act.[8]

The Federal Circuit has also imposed a presentment requirement. Plaintiffs challenging in a civilian court their conviction by a court-martial must demonstrate that they raised in the military-justice system any alleged constitutional defects for which they seek review. *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990). Plaintiffs must present to the military-justice system "the claim itself, not merely pointed to facts that in [their] view and in hindsight, support it." *Id.*; *see also Moore v. United States*, 61 Fed. Cl. 146, 150 (2004) ("[a] claim not

---

[8] At oral argument, the defendant for the first time explained that the plaintiff's enlistment had been set to expire during the court-martial proceedings. The defendant asserted that the Army extended the plaintiff's enlistment for the duration of the court-martial and the plaintiff's confinement. Had the plaintiff been acquitted, he would have been discharged promptly, therefore suffering no reduction in rank and no compensable monetary injury. The defendant argues that the plaintiff in fact benefitted financially by having his enlistment extended during his trial and confinement, because he was paid beyond the end of his regular enlistment. The defendant argues, therefore, that the plaintiff cannot demonstrate any monetary injury to support jurisdiction. The defendant did not include this argument in its motion to dismiss under RCFC 12(b)(1) and provided no evidence to support its factual assertions. As a result, this argument will not be considered in connection with the instant motion. In a second motion for leave to file an amended complaint, the plaintiff seeks to provide evidence rebutting the defendant's factual claim about the scheduled end of the plaintiff's enlistment. Because this argument has not been considered in resolving the motion to dismiss, the evidence the plaintiff seeks to provide is not required.

8

raised in the military courts is waived for the purposes of this collateral review"), *aff'd*, 121 F. App'x 857 (Fed. Cir. 2005). A claim that relies on "overlap[ping] evidence supporting different claims" raised before the military court is insufficient. *Martinez*, 914 F.2d at 1489.

The defendant argues that only one of the four constitutional claims alleged in the complaint, the one challenging the jury instruction on propensity evidence, was raised either before the court-martial or in the appeal to the JAG. The other three claims, the defendant argues, are therefore waived.

The plaintiff's appeal to the JAG of his conviction contained two arguments: (1) that the evidence was insufficient to support the conviction (ECF 9-3 at 9); and (2) that the military judge abused his discretion by instructing the jury it could consider evidence of charged sexual misconduct to show the plaintiff's propensity to commit other charged sexual misconduct. (*Id.* at 18). No other claims were raised in the plaintiff's appeal.

Because the plaintiff's claim for an unconstitutional jury instruction was presented on appeal, that claim satisfies the presentment requirement.

The defendant argues that the claim that the JAG's alleged arbitrary and capricious decision not to overturn the conviction on specification three is waived. The plaintiff does not pursue here the argument he presented to the JAG that the evidence was insufficient to support his conviction. He is pursuing only the argument that he presented to the JAG about the jury instruction that improperly incorporated propensity evidence. This claim about the JAG's allegedly arbitrary and capricious decision depends on the success of the jury-instruction claim. If the JAG's decision on that issue was correct, then the plaintiff has no separate claim that the JAG's decision was arbitrary; if the JAG's decision was incorrect, then there is no separate claim regarding the JAG's decision. This claim thus collapses into the claim about the jury instruction, over which jurisdiction exists.

The plaintiff challenges the pretrial loss of the audio recording of the first Article 32 proceeding. The plaintiff does not allege that he complained before the trial judge about the loss of that recording, and no claim about the lost recording was presented on appeal to the JAG. Because no argument was presented to the military-justice system regarding this claim, it is waived under *Martinez*.

Finally, the complaint alleges that the plaintiff received ineffective assistance of counsel throughout the court-martial proceedings, starting with the defense team's failure to object to the loss of the recording of the Article 32 hearing through trial and the appeal to the JAG. The Supreme Court has recognized the ineffective assistance of counsel as "cause for a procedural default." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Such a claim could potentially excuse the plaintiff's failure to raise his Article 32 claim and salvage it for consideration here. In the context of the collateral review of a court-martial conviction by this court, the Federal Circuit has held, however, that "[i]t is immaterial if [a plaintiff] erroneously relied on the advice of counsel in choosing not to raise the claim" before the court-martial or during the military appeal. *Martinez*, 914 F.2d at 1489. The plaintiff "is bound by the actions or inactions of his

representative." *Id*. (citing *Johnson v. Dep't of the Treasury*, 721 F.2d 361, 365 (Fed. Cir. 1983)). The failure to present an argument during the military-justice proceedings constitutes a jurisdictional bar preventing a plaintiff from asserting that argument on collateral review unless the attorney's decision fell "so far 'outside the wide range of professionally competent assistance' that it amounts to ineffective assistance of counsel, does reliance on it excuse a procedural default." *Id.* (quoting *Davis v. Marsh,* 876 F.2d 1446, 1450 (9th Cir. 1989), quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). "Failing to raise a particular claim simply does not rise to [the] level" of ineffective assistance of counsel sufficient to overcome procedural default. *Id.*; *see also Longval v. United States*, 41 Fed. Cl. 291, 298 (1998) (decisions by defense counsel on "what motions to file and whether to file motions at all, or whether to object to particular testimony, is squarely within the realm of trial strategy. *Strickland* does not allow subsequent counsel's strategic hindsight to support a claim of deprivation of the Sixth Amendment right to assistance of counsel").

The plaintiff knew about the lost recording of the first Article 32 proceeding by July 2014. His counsel chose not to raise the issue either during the court-martial in October 2014 or his appeal to the JAG. Under *Martinez*, the plaintiff has not alleged any facts to support his claim of ineffective assistance of counsel to overcome waiver. The ineffective-assistance claim fails to overcome the lack of jurisdiction to consider the claim over the lost recording.

The court only has jurisdiction to consider the related claims that the trial was constitutionally infirm because of the jury instruction and the JAG's decision to overturn only the conviction on specification two and not also the conviction on specification three. The plaintiff's other claims are not properly before the court.

### B.     Motion for Leave to Amend

The current complaint is adequate to sustain the court's jurisdiction over the claim for the difference in earnings for the 179-day period of confinement arising from the reduction in the plaintiff's rank. Within the current complaint, the plaintiff has properly raised a claim concerning the erroneous jury instruction. The plaintiff's other claims are not properly before the court. The plaintiff's first proposed amended complaint does not remedy these problems arising from his failure to raise his claims during the court-martial and his appeal to the JAG. Any amendment to the complaint would therefore be futile and is otherwise unnecessary. Even if the plaintiff could present a complaint that includes claims over which the court would have jurisdiction, any amendment would still be futile, because the plaintiff cannot state a claim for which relief can be granted. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1353 (Fed. Cir. 2006) ("leave to amend may be denied if the court finds that . . . the amendment would be futile").

The same is true for the second proposed amended complaint. The new factual claims the plaintiff seeks to include are not required, because the factual assertion the evidence seeks to rebut has not been considered. Further, the new claim regarding the sufficiency of the evidence is not a claim that goes to the only issue over which this court can exercise jurisdiction, *viz.*, whether the court-martial proceedings were infected by severe constitutional defects. The

plaintiff's proposed additional ground for seeking to overturn his conviction therefore also fails to state a claim. The second proposed amended complaint would also be futile. Accordingly, both motions for leave to amend the complaint are denied.

### C.   Failure to State a Claim

The defendant argues that even if the court possesses jurisdiction over the plaintiff's claims, the complaint still must be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. The defendant notes that all the claims fall beyond "the narrow category of claims which this [c]ourt may collaterally review" under *Shaw v. United States*, 357 F.2d 949, 954 (Ct. Cl. 1966) (only "pure issues of constitutional law, unentangled with an appraisal of a special set of facts" may be considered on collateral review of courts-martial). (ECF 9 at 20.) The plaintiff, in response, argues that the defendant's argument improperly attempts to consider the merits of the case at the motion-to-dismiss stage. (ECF 12 at 23.) The plaintiff's response neither addresses the defendant's arguments as to why each alleged constitutional violation fails to state a claim nor explains what additional information he requires to allow him to contest the motion.[9]

The Court of Federal Claims may collaterally review a court-martial conviction only when the plaintiff has "demonstrate[d] convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process." *Bowling*, 713 F.2d at 1561; *Pittman v. United States*, 135 Fed. Cl. 507, 521 (2017) (the Court of Federal Claims "has jurisdiction, to review [a] collateral attack on a court-martial proceeding, only where the Military Pay Act claims arose from a conviction in a court-martial that suffered severe constitutional defects."), *aff'd*, 753 F. App'x 904 (Fed. Cir. 2019). Such a review is an "exception to the rule of finality" typically afforded to court-martial decisions that have gone through the military's appellate process. *Id*. The Federal Circuit's decision in *Bowling* was guided by the Supreme Court's decision in *United States v. Augenblick*, 393 U.S. 348, 356 (1969), which explained that "a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . than a disciplined contest." Under these principles, a court "may entertain military discharge claims only where they sufficiently allege . . . severe constitutional violations in the underlying military justice proceeding." *Reid*, 159 Fed. Cl. at 628 (citing *Burns v. Wilson*, 346 U.S. 137, 142 (1953)).

---

[9] The plaintiff's failure to address the substance of the defendant's 12(b)(6) arguments could on its own be adequate to dismiss the complaint for failure to state a claim. *See Melwood Horticultural Training Ctr., Inc. v. United States*, 151 Fed. Cl. 297, 309 (2020) ("failure to respond to the United States' . . . arguments on the merits can be construed as a concession of the issue"); *Phil. Auth. Indus. Dev. v. United States*, 114 Fed. Cl. 519, 527 (2014) ("The court construes plaintiff's silence regarding the merits of defendant's argument . . . as [its] concession as to the validity of the defendant's position"). The plaintiff's meager counter to the defendant's arguments on RCFC 12(b)(6) that the defendant is prematurely seeking to litigate the merits of the case can, if construed generously, be read as a bare-bones response. The substance of the plaintiff's opposition will therefore be considered.

11

Plaintiffs seeking to advance a successful claim on collateral review of courts-martial "must demonstrate convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process." *Bowling v. United States*, 713 F.2d at 1561.

In considering a collateral attack on a court-martial conviction and applying this high standard, a court may not consider factual claims specific to the conviction. Instead, collateral review of a court-martial conviction is limited to a consideration of whether the proceedings, viewed as a whole, deprived the plaintiff of fundamental fairness amounting to a violation of due process. Factual determinations, and the application of the law to any finding of fact, are therefore beyond the ability of this court to consider on collateral review. *See Bowling*, 713 F.3d at 1561 ("Questions of fact resolved by military courts cannot be collaterally attacked."); *Flute v. United States*, 210 Ct. Cl. 34, 38 (1976) (a civil court may neither "retry the facts of a court-martial proceeding nor [ ] act as a reviewing court of the decision of the court-martial tribunal"); *Taylor v. United States*, 199 Ct. Cl. 171, 174 (1972) (a court "will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court"). Although the defendant tries to shoehorn the limits on a civilian court's authority to review collaterally the judgments of courts-martial under its RCFC 12(b)(1) argument, this limitation is better seen instead as a standard of review a court should follow in considering whether the plaintiff has stated a plausible claim for relief.

The applicable precedents indicate that a civilian court must review the court-martial proceedings in their entirety, not through each separate claim of error. It is not a question of whether a single action by the military court opened the door to a constitutional violation, but whether the entirety of the court-martial created a proceeding devoid of due process guaranteed by the Constitution. Thus, the court may consider the individual claims of the complaint only for the purpose of determining their effect on the proceedings as a whole. The aggregate of the plaintiff's claims must establish that the court-martial proceeding was "more a spectacle . . . than a disciplined contest." *Augenblick*, 393 U.S. at 356. The plaintiff cannot succeed on his claim because the record demonstrates convincingly that the entirety of the proceedings by which the plaintiff was convicted comported with the requirements of due process. Mistakes were made, and one of these mistakes resulted in one of the plaintiff's convictions being overturned by the JAG. Overall, however, the plaintiff has not pleaded any facts that could amount to a demonstration that that the plaintiff's court-martial proceeding in its entirety was so devoid of "fundamental fairness as to impair due process." *Bowling*, 713 F.2d at 1561.

Turning first to the claim over the lost recording, the defendant argues that the plaintiff has explained neither "how the missing tapes were material to the outcome of the trial such that the loss deprived the trial of all fundamental fairness," nor how the written report of the Article 32 proceeding summarizing that testimony was inadequate. (ECF 9 at 21-22.) The plaintiff argues in response only that the defendant's contention prematurely attempts to litigate the merits of the case and does not address the issue of how the loss of the recording rises to the level of a constitutional deprivation of due process. (ECF 12 at 25-26.) The obligation to accept

the fact of the lost recording does not obligate the court to conclude that the loss of the recording resulted in the legal conclusion that the plaintiff was thereby deprived of fundamental fairness.

The plaintiff received a written summary of the Article 32 proceeding, which he was also able to attend. On its face, the complaint alleges that the plaintiff cross-examined the complainant at the court-martial about contradictions in her story, notwithstanding the loss of the recording. (ECF 1 at ¶¶ 93-98; 102-07.) Perhaps that cross-examination might have been more effective had the recording not been lost, but the plaintiff has not attempted to explain how or why. Instead, he argues simply that the mere fact that the recording of the first Article 32 proceeding was lost deprives him of due process. On this record, that argument must fail. The plaintiff was tried; the complainant testified and was subject to cross-examination. The jury chose to believe her and not the plaintiff. Whatever the complainant had testified to at the Article 32 proceeding lost any force it once might have had when she appeared at trial and was subject to cross-examination.

As for the related claims of the improper jury instruction and the JAG's refusal to overturn both convictions, the plaintiff again fails to show any significant constitutional violation rising to the level of a deprivation of due process. True, the instruction violated Military Rule of Evidence 413. The military judge allowed the jury to use charged similar crimes to show the plaintiff's propensity to commit those acts; that instruction was erroneous. The instruction covered the three non-rape specifications; it specifically excluded the two specifications of rape. The plaintiff was acquitted of two of those three specifications. The plaintiff was convicted only of sexual assault (specification two) and the rape (specification three). The erroneous instruction did not influence the jury, which acquitted the plaintiff on two of the three specifications for which it was allowed to use the propensity evidence. On appeal to the JAG, the plaintiff received relief from the improper jury instruction as to specification two, when the JAG dismissed the conviction for that specification on appeal. The JAG also found that the erroneous instruction did not affect the conviction on specification three, which was not mentioned in the faulty instruction. The JAG's decision demonstrates that the constitutionality of the court-martial jury instructions was considered, and the error was corrected. Given the JAG's corrective action, the plaintiff has failed to make out any plausible claim that the erroneous jury instruction affected his conviction or otherwise deprived his court-martial process of fundamental fairness.

As to the claim that the JAG arbitrarily and capriciously declined to find that the error that rendered the plaintiff's specification-two conviction unfair also tainted his conviction on specification three, the complaint also fails to state a claim. First, this claim does not appear to allege a constitutional violation at all but alleges simply that the JAG misapplied the law to the facts concerning the plaintiff's specification-three conviction. A claim that a government agent acted arbitrarily and capriciously is typically considered under the Administrative Procedure Act ("APA"). The APA is a statute, not a constitutional provision, and is therefore beyond the scope of a civil court's collateral review of a court-martial conviction; such review is restricted to a consideration of "pure issues of constitutional law." *Shaw*, 357 F.2d at 954. Moreover, "when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to . . . re-evaluate the evidence." *Burns*, 346 U.S. at 142; *see also*

*Bowling*, 713 F.2d at 1652 ("it is not the responsibility of a civil court to reweigh the factual evidence[,] and . . . those factual determinations made by a court-martial are not of constitutional significance, absent a showing that the trial was not a fair and disciplined contest"). The plaintiff's argument that the JAG misapplied the law to the facts goes beyond the limited scope of review available here. This aspect of the complaint thus fails to state a claim upon which relief is available.

Finally, the plaintiff has failed to state a claim that he received ineffective assistance of counsel. The complaint cites the following instances of ineffective assistance: (1) defense counsel attempted to persuade the plaintiff to plead guilty; (2) defense counsel failed to object to the loss of the audio recording of the January 2014 Article 32 hearing and failed to pursue appropriate remedies for that loss; (3) defense counsel did not allow a defense witness to testify about the plaintiff's interactions with the NCO before her allegations against the plaintiff; (4) defense counsel failed to object when a potential juror made negative comments about the plaintiff; and (5) defense counsel failed to object to the defective jury instructions on propensity evidence. (ECF 1 at ¶¶ 191-200.) The defendant argues that the plaintiff has failed "to identify how these errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" (ECF 9 at 24 (quoting *Strickland*, 466 U.S. at 687).)

The plaintiff had more than one defense lawyer representing him during the court-martial. The complaint refers consistently to the "defense team," (*e.g.*, ECF 1 at ¶¶ 116-21; 168-70; 194-95; 197-99), and refers to "one of the defense attorneys." (*Id*. at 196.) The plaintiff's appeal to the JAG was undertaken by a civilian lawyer. (ECF 9-1.)  The court must afford these lawyers "wide latitude . . . in making tactical decisions," and "[r]are are the situations" in which this latitude will "be limited to any one technique or approach." *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (citing *Strickland*, 466 U.S. at 689). A defense team is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 107. Generally, decisions such as which witnesses to call, what evidence to present, and what motions to file fall within an attorney's ability to formulate a trial strategy. *See Longval*, 41 Fed. Cl. at 298.

Given the latitude that must be afforded to the plaintiff's lawyers to have tried the case as they saw fit, the complaint's bare assertions that the decisions made by those lawyers deprived the plaintiff of a constitutionally adequate defense are insufficient to state a claim for relief. He fails to allege prejudice arising from the ineffective assistance. The plaintiff is effectively engaged in Monday-morning quarterbacking. The plaintiff must plausibly allege that the strategic and tactical decisions made by his lawyers not only proved to be wrong, given the result, but at the time they were made were so egregious as to exceed the latitude typically afforded to counsel's trial strategy. The complaint has not done so, and the plaintiff has not even attempted in response to the motion to point to a plausible path to demonstrating that his lawyers' decisions deprived him of a fair trial or due process and caused him prejudice. Indeed, his lawyers secured acquittals on three of five specifications at trial and then secured the reversal of one of the two convictions. The plaintiff alleges he was let down by his lawyers. The record shows otherwise. The remaining conviction turned on a credibility determination, which was for

the jury to resolve, and the complaint fails to allege how the putative deficiencies in the performance of his lawyers resulted in that conviction.[10]

The claims of error in the court-martial alleged in the complaint fail to demonstrate that the plaintiff experienced an unremedied violation of his constitutional rights depriving him of due process. On his single claim that was not waived, involving the improper jury instruction, the mistake that was made was corrected at the appellate stage by the JAG. A civil court's collateral review of a court-martial is holistic. The civil court asks whether the plaintiff's claims, taken together, allege a court-martial proceeding so devoid of fundamental fairness as to impair due process. The answer in this case is no, and the complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

## VI. CONCLUSION

While the complaint falls within the court's jurisdiction, only two of the plaintiff's claims are not waived. The amendments proposed by the plaintiff do not cure that jurisdictional defect. As to the claims that are not waived, however, the complaint fails to state a claim on which relief can be granted. Accordingly, the defendant's motion to dismiss under RCFC 12(b)(1) is granted in part and denied in part. The motion to dismiss under RCFC 12(b)(6) is granted. The motions for leave to amend the complaint are denied as futile. A separate order filed concurrently with this opinion will direct the Clerk to enter judgment.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[10] In his second proposed amended complaint, the plaintiff seeks to challenge the sufficiency of the evidence that supported his conviction. Such a claim is fact-specific and therefore does not fall within the limited scope of review permitted to a civil court conducting collateral review of a court-martial conviction. *Burns*, 346 U.S. at 142; *Bowling*, 713 F.2d at 1652. Even if this claim was subject to being considered, it would necessarily fail, as it merely seeks to have the collateral-review court substitute its judgment for the conclusion of the jurors who heard the testimony and observed the witnesses. Such an outcome is especially improper in a case that turned on the credibility of the witnesses. In any event, because the newly proposed claim is beyond the scope of collateral review, it too fails to state a claim for relief, and allowing the plaintiff to amend his complaint to pursue the claim would be futile.

15